IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

TRAVIS MOORE,

          Defendant.

Criminal No. 19-0162
Civil No. 21-00512

ELECTRONICALLY FILED

**Memorandum Opinion on Motion to Vacate, Set Aside, or Correct Sentence under
Title 28 U.S.C. Section 2255 and Related Motions (Doc. 1311, Doc. 1313 and Doc. 1403)**

## I.        Introduction

Currently pending before this Court is the *Pro Se* Motion to Vacate Sentence and related Motions for Discovery, and to Appoint Counsel, filed by Petitioner, Travis Moore (hereinafter "Petitioner," "Moore" or "Defendant"), and Responses/Reply thereto.  (Doc. 1311, Doc. 1313, Doc. 1403 and Doc. 1464).  In Petitioner's Motion to Vacate Sentence, he raises three (3) claims of alleged ineffectiveness of counsel, subsequent to his guilty plea and sentence, pursuant to an agreement for a stipulated sentence pursuant to Fed. R. Crim. P. 11(c)(1)(C).

First, Petitioner claims that counsel was ineffective for failing to challenge the career offender enhancement under U.S.S.G. Section 4(B)(1) and (b)(2).  Second, in a related argument, Petitioner contends that under the recent decision of the United States Court of Appeals for the Third Circuit, in *United States v. Nasir*, he is not a career offender, and his counsel was ineffective for failing to request a stay or continuance of his sentencing until *Nasir* was decided. *United States v. Nasir*, 982 F.3d 144 (3d Cir. 2020).  And third, Petitioner claims that counsel failed to file an appeal after Petitioner instructed him to do so.

1

The Government responds that the record does not support Moore's arguments and are without merit because of the thorough colloquy during the plea proceedings before this Court, at which the terms of Petitioner's stipulated sentence, as well as all other terms of his plea agreement were reviewed in detail.  Petitioner affirmatively agreed with those facts and statements unequivocally in open court under oath; and, he expressed his knowing and voluntary acceptance of and apparent satisfaction with the agreed-upon sentence in his 11(c)(1)(C) plea letter.  Petitioner provides an affidavit in support of his contentions but does not address the crucial fact that the thorough guilty plea colloquy and his answers to this Court's questions, under oath, negate his arguments now.  The record simply does not support his assertions.

For these reasons, and as further detailed in the foregoing Memorandum Opinion, Petitioner has failed to demonstrate that his counsel was ineffective, or that he was prejudiced by any alleged ineffectiveness.  Petitioner's Motions (Doc. 1311) will be DENIED without a hearing, without discovery, and without appointment of an attorney. (Doc. 1313 and Doc. 1403).

## II.        Background and Procedural History

On June 4, 2019, a federal grand jury in the Western District of Pennsylvania returned a six (6) count Indictment against Defendant, and numerous other Co-Defendants, on drug conspiracy charges.  (Doc. 3).   Defendant was charged at count one, with conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, from August 2018 to May 2019, in violation of 21 U.S.C. § 846, which carried a mandatory minimum of five (5) years to a maximum of forty (40) years' imprisonment. (See Doc. No. 4 (citing 21 U.S.C. §§ 846, 841(b)(1)(B)(i)).  On June 12, 2019, Defendant was arrested, made his initial appearance, and attorney Robert J. Perkins, Esquire, was appointed to represent him.  (Doc. 115).

A. **Petitioner's Counsel Requested, and Petitioner had the Benefit of a Pre-Plea Investigation Report, to Pre-Determine his Career Offender Status.**

On November 4, 2019, Defendant filed a consent Motion for a Pre-Plea Presentence Investigation Report to pre-determine his criminal history and career offender status, and the Court granted this Motion on November 5, 2019.  (Doc. 526 and Doc. 527).  On January 6, 2020, the report was disclosed to Defendant and the Government. (Doc. 701 and 702).   The pre-plea report concluded that Defendant's two prior convictions for "controlled substance offenses," qualified him as a career offender.   With Defendant's advanced knowledge of his career offender status, which many Defendants do not possess prior to their guilty plea hearing, on January 14, 2020, Defendant plead guilty before this Court pursuant to a plea agreement.

B. **The Written Plea Agreement and the Change of Plea Proceeding Was Thorough and Demonstrated Moore's Guilty Plea Was Knowing and Voluntary.**

The written plea agreement, dated January 8, 20[20], was disclosed to the Court and contained a stipulated sentence. (Doc. 723-1).  Prior to the commencement of the plea proceedings, Moore and his counsel had an opportunity to communicate with each other.  (See Plea Hr'g. Tr., January 14, 2020, at 16:18-23).

As in all criminal proceedings before this Court, at the outset of the plea hearing, Moore was sworn under penalty of perjury (id. at 2:15-23) and, at the conclusion, he confirmed he answered truthfully to all of the Court's questions (id. at 23:14-16).  Consistent with the standard practice of this Court, it conducted a thorough hearing and colloquy of Defendant (id. at 2:24-8-24); found him competent (id. at 24:2-5) and reviewed in detail the rights he was waiving if he chose to proceed with pleading guilty, to which the Defendant confirmed he understood each of those rights under penalty of perjury (id. at 5:5-8:24, 18:25-19:2).

During the course of the hearing, Defendant testified under oath that he was pleading guilty voluntarily, of his own free will. and that no one had forced or otherwise induced him to plead guilty. (See id. at 14: 11-17; 19:6-11). Upon extensive questioning by this Court, at least three (3) times, Defendant reiterated his desire to proceed with pleading guilty at the beginning, middle, and end of the proceedings. (See, e.g., id. at 2:24- 3:14; 8:22-24; 18:25-19:2).

Not only was the Defendant thoroughly advised of the rights he was waiving by pleading guilty, but the terms of his plea agreement were also reviewed extensively in open court. Defendant verified that he had previously read and reviewed the entire plea agreement with his attorney, understood it and voluntarily signed the plea agreement, thereby accepting its terms. (Id. at 12:20-13:9).

Pursuant to the terms of the plea agreement, Defendant agreed to waive various appeal rights, which Defendant confirmed he had previously discussed with his attorney under oath and after questioning by the undersigned. This Court thoroughly reviewed those appellate waivers and the probability that those waivers would be invalidated, and Defendant affirmed that he understood the appellate waivers.

> THE COURT: Do you understand that in the plea agreement, that you're giving up your right to appeal both the validity of your plea, the legality of your sentence with only three limited exceptions: You may file an appeal from the judgment and sentence of the Court only, one, if the United States files an appeal or; two, if the sentence exceeds the applicable statutory limits set forth in the United States Code; or, three, the sentence unreasonably exceeds the applicable advisory guideline range under the United States Sentencing Guidelines? Understand?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you also understand that there's nothing in your waiver of appellate rights as set forth in the plea agreement that shall preclude you from raising a claim of ineffective assistance of counsel in the appropriate forum?
>
> THE DEFENDANT: Yes, sir.

THE COURT: On the other hand, do you understand the Government retains its right to oppose any such claim on procedural or substantive grounds?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you are giving up your right to appeal, including you're waiving your right to file a motion to vacate sentence under Title 28 United States Code Section 2255, except as I've stated?

THE DEFENDANT: Yes,

At the conclusion of the change of plea hearing, this Court accepted Moore's plea agreement, and agreed to sentence him in conformance with the terms of the stipulated sentence, which were quite favorable to Defendant, as the sentence of 96 months imprisonment was approximately 92 months below the low end of the Sentencing Guideline Range of 188 to 235 months imprisonment.

   C.   **Petitioner Was Sentenced in Accordance with the Terms of the Plea Agreement and Consistent with the Guilty Plea Proceedings.**

On April 14, 2020, the Final Presentence Investigation Report (PSIR) was docketed. (See Doc. 922).  The findings of the PSIR were identical to those contained in the pre-plea report – designating Moore as a career offender (and he had the benefit of knowing that information even prior to his Change of Plea). (Id. at ¶¶ 39-40).

On April 20, 2020, Moore filed a counseled Position with Respect to Sentencing Factors, indicating he "has reviewed the well-drafted Presentence Investigation Report (PIR). He does not have any formal objection." ([Doc. 943](Doc. 943)).

On April 28, 2020, Moore's counsel requested the Court conduct the hearing via video – rather than wait until the Court could conduct an in-person hearing – specifically indicating that he wanted sentencing to proceed "expeditiously". (Id. at ¶¶ 2) ("He therefore requests his

Sentencing Hearing be conducted via video…"); ("Defendant hereby waives his right to be physically present . . . so that it may be expeditiously concluded.").

On May 19, 2020, the Court conducted the sentencing hearing by videoconference, at which Moore affirmed, under oath, his request to conduct the sentencing hearing via video – thereby reaffirming that the ends of justice (and his interests) were best served by proceeding with the hearing.  (Doc. 1164 (Sentencing Hr'g. Tr., May 19, 2020), at 3:14-6:1)).

Also, importantly, at the sentencing hearing, Defendant confirmed that he had reviewed the PSIR and its Addendum and that there were no errors in the PSIR.  Because the plea agreement prevented the United States from seeking any additional sentencing enhancements under the Guidelines, and consistent with the calculation by the United States Probation Office, this Court found that the Defendant's offense level was 31 and his criminal history category was VI. (See Id. at 13:4-8), resulting in a Guideline range of 188 to 225 months. (Id.).

At the sentencing, Defendant made an oral statement to the Court wherein he asked the Court for a variance from the agreed-upon stipulated sentence.  He stated:

> Your Honor, I know we have an 11(c)(1)(C) agreement of 96 months, but I was asking for a little leniency of maybe six months to a year. I only ask for that because this is my first time ever in jail, and I also know if I can get six months to a year outside of jail, I can be six months closer to success.

(Id. at 10:15-24).

The request for variance, however, was expressly precluded by the plea agreement, which stated that the parties shall not seek "other enhancements, departures or variances," (Doc. 723-1,¶ (C)(3)).  This Court denied Defendant's request for a variance, considering the stipulated sentence between the parties, and stated, "I'm sure you appreciate, Mr. Moore, the 11(c)(1)(C) sentence of imprisonment of 96 months is well below even the low end of the guideline range, so your counsel served you well in that regard." (Id. at 10:15-17; 12:21-23; 13:16-19).

Additionally, this Court questioned Defendant about whether he was satisfied with the services

of his attorney, to which he responded affirmatively twice.

> THE COURT: Are you satisfied with the service and representation provided
> by your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Has he done everything you asked him to do?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is there anything he did that you think he should not have done?
>
> THE DEFENDANT: No, sir. (Id. at 11:7-15)

On May 19, 2020, four (4) months after accepting Moore's stipulated sentence/plea

agreement, he was sentenced before this Court consistent with the terms of the binding plea

agreement, to which he agreed both orally, before this Court, and in writing (through his signing

of the plea agreement).  In conformance therewith, Moore was sentenced to 96 months of

imprisonment, and 5 years of supervised released.

Consistent with the standard practice of this Court at the end of the sentencing hearing,

the undersigned reminded Moore of his appeal rights, his waiver of those rights in his plea

agreement, and the fact that any notice of appeal would need to be filed within fourteen (14)

days. (Id. at 20:4-15). The Court asked Moore if had any "desire to appeal my sentence." (Id. at

20:16), to which he responded, "No, sir." (Id. at. 17).

This Court subsequently reminded Moore that if he changed his mind, he had fourteen

(14) days to do so, using his current attorney, or else he would lose his right to appeal. (Id. at

20:18-23).  Moore indicated that he understood.  Given his plea agreement and stipulated

sentence, coupled with his waiver of many of his rights to appeal, as well as Moore's emphatic

"no" when asked by the Court if he wanted to file an appeal at sentencing, it is not surprising that Moore did not file an appeal within the requisite fourteen (14) day period.  No direct appeal was ever filed.

> D.   **Petitioner Has Filed a Letter and Post-Sentencing Motions Which the Court Has Denied.**

On January 26, 2021, a handwritten letter from Petitioner to this Court was docketed and in it, he explained his efforts at rehabilitation during his sentence, and he did not seek a reduction in sentence.  (Doc. 1269).  Notably absent from his letter is any expression of dissatisfaction with his change of plea, sentencing, his attorney, or his allegations that he instructed his attorney to file a notice of appeal.  (Id.).  Rather, he states:  "I am writing to keep you updated on my progress to change my life because I never want to come back and also to let you know that I am taking my time serious and learning from my mistakes. I'm not sharing this with you to get time off my sentence I'm sharing this because I'm proud of myself."  (Id.).

On March 15, 2021, Moore filed a Motion for Release pursuant to the CARES Act and/or First Step Act, and counsel was thereafter appointed, who filed a supplemental Motion on his behalf.  While the Motion for Release was still pending, Petitioner filed the Instant Motion to Vacate Sentence.  Before the deadline elapsed for filing a motion based upon ineffective assistance of counsel, Petitioner's Motion was docketed on April 16, 2021.

In Moore's Motion to Vacate, he claims his attorney was ineffective for: (1) "failing to challenge the career offender enhancement under U.S.S.G. §4B1.1(a) and (b)(2); (2) "failing to file a motion to stay sentencing pending the Third Circuit's ruling in *United States v. Nasir*"; and (3) "fail[ing] to file a notice of appeal after being instructed to do so".  (Doc. 1311).

Moore provides an affidavit in which he asserts the following claims:

• "[C]ounsel of record never had any intention of investigating my career offender issue" and "had it not been for counsel's failure to investigate the background of my prior cases and the Governments consistent claim that I was a career offender, I would not have accepted a plea to 8 years when my guideline range fell between three to four years."

• "[C]ounsel never challenged or objected to the drug amount that I was held accountable for (100-400 grams of heroin) when the indictment specifically pointed out that I was accountable for 80 grams."

• At sentencing, "counsel completely abandoned me and failed to argue for a variance or even some leniency in regards to the sentence."

• "[A] few days following the sentencing hearing, I wrote counsel a letter advising him that I wanted a notice of appeal filed on my behalf. The letter was within the 14-day time frame allowed, but upon information and belief, the appeal request was ignored by counsel".

(Doc. 1312).

However, as the Government emphasizes and this Court agrees, Moore attaches exhibits to his Affidavit, which directly contradict many of the arguments he advances in the instant Motion, and his other contentions are directly refuted by the record (for example, Petitioner wrongfully claims that the Indictment charges him with 80 grams but he was actually charged with 100-140 grams and counsel's letter stated that he would argue for a variance if Moore chose not to accept the plea agreement for a stipulated sentence).  Specifically, Defendant attaches:

• Exhibit 1: a handwritten letter from Moore, dated May 24, 2020, to his counsel, Mr. Perkins.

• Exhibit 1A: a typed letter from Mr. Perkins, dated April 1, 2021, to Moore, regarding the United States Court of Appeals for the Third Circuit's decision in *United States v. Nasir,* 982 F.3d 144 (3d Cir. 2020).

• Exhibit 1B: a typed letter from Mr. Perkins, dated November 20, 2019, to Moore, regarding Moore's case and pending plea discussions with the government.

(Doc. 1312-1).

Consistent with caselaw and the standard practice of this Court when a *Pro Se* Motion to Vacate is filed, the Court issued a *Miller* Notice, with a deadline of May 26, 2021, for Moore to provide his Statement of Intent.  (Doc. 1314).  His statement was docketed on July 2, 2021 (over a month after the deadline), and in it, he explains that he wishes to proceed with his Motion as filed, without the services of an attorney.  (Doc.1361).

Meanwhile, this Court denied his Motion for Compassionate Release on July 30, 2021. (Doc. 1369).  Petitioner then appealed the denial of the Motion for Release.  (Doc. 1376).  On January 14, 2022, the United States Court of Appeals for the Third Circuit summarily affirmed this Court's denial of the Motion for Compassionate Release.  (Doc. 1454).  The Court permitted Petitioner to file his Reply, which he did on March 14, 2022.  The instant Motion to Vacate is timely because it was filed within one year of the date Petitioner's judgment became final (final judgment was entered on May 19, 2020).  (Doc. 1006).   Also, on April 16, 2021, Petitioner filed a Motion for Discovery, and a second Motion to Appoint Counsel on September 7, 2021.  (Doc. 1313 and Doc. 1403). The current Motions are ripe for review.

**III.     Standard of Review**

Title 28 U.S.C. Section 2255 provides, in relevant part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be

served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

Whether to conduct a hearing is within the sound discretion of the District Court. *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008); *United States v. Day*, 969 F.2d 39, 41 (3d Cir. 1992)(*quoting* *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir.1989), *cert. denied* 500 U.S. 954 (1991)). In exercising that discretion, "the [C]ourt must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. Further, the Court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Day, 969 F.2d at 41-42* (citation omitted). *See also* Rules Governing Section 2255 Proceedings, Rules 4 and 8. The Court must view the factual allegations in the light most favorable to the Petitioner. *Government of the Virgin Islands v. Weatherwax,* 20 F.3d 572, 574 (3d Cir. 1994) (district court erred in failing to conduct evidentiary hearing on Petitioner's non-frivolous allegations of ineffective assistance of counsel) (subsequent history omitted). However, a Section 2255 Motion may be dismissed without a hearing if: (1) its allegations, accepted as true, would not entitle Petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (citations omitted).

In order for Petitioner to establish counsel was ineffective, he has the burden to show counsel's performance (i) was in fact deficient and (ii) that the deficient performance so

prejudiced the defense as to raise doubt to the accuracy of the outcome of the trial [or the sentence]; i.e., Petitioner must demonstrate a reasonable probability that, but for counsel's deficiency, the outcome of the trial [or sentence] would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 692 (1984).  Counsel's conduct presumptively "falls within the wide range of reasonable professional assistance," and the Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Id.* at 689-90 (citation omitted).  On the other hand, the mere fact that counsel's challenged performance or tactic can be called "strategic" in the sense it was deliberate, does not answer the dispositive question of whether that decision or tactic fell within the wide range of "reasonable professional assistance." *Davidson v. United States,* 951 F.Supp. 555, 558 (W.D.Pa. 1996), *quoting* *Government of the Virgin Islands v. Weatherwax,* 77 F.3d 1425, 1431-32 (3d Cir.), *cert. denied* 117 S.Ct. 538 (1996).  "Reasonable trial strategy must, by definition, be reasonable." *Davidson,* 951 F.Supp. at 558.

Counsel's strategy must be judged by a standard of reasonableness based on the prevailing norms of the legal profession. *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (*Strickland* standards for claims of ineffective assistance of counsel unchanged under Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214). Ineffective assistance of counsel will not be found simply because, with the assistance of hindsight, the reviewing court disagrees with counsel's strategy. *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).  In the context of a Section 2255 petition for collateral relief, the Unites States Court of Appeals for the Third Circuit has offered the following guidance:

> The . . . test for determining whether a hearing should be held on an ineffectiveness claim is slightly altered by the *Strickland* holding. Our analysis of allegations of ineffectiveness of counsel breaks down into two parts.  First, we must determine whether the district court considered as true all of appellant's

nonfrivolous factual claims.  This step requires that we review whether the district court properly found certain allegations frivolous. Second, we must determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel.  To evaluate claims under this second step, we must turn to both prongs of the *Strickland* test.  If a nonfrivolous claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing.  If, on the other hand, a claim, when taken as true and evaluated in light of the existing record, states a colorable claim for relief under *Strickland*, then further factual development in the form of a hearing is required.  That is, if a nonfrivolous claim does not conclusively fail either prong of the *Strickland* test, then a hearing must be held.  Thus, the district court must employ the *Strickland* analysis at least once, and may have to employ it twice--first, as a threshold analysis of all claims on a limited record, and then again only on colorable claims after full factual development of those claims.

*United States v. Dawson,* 857 F.2d 923, 927-28 (3d Cir. 1988).

Under the first prong of the *Strickland* test, "an attorney renders ineffective assistance when his performance 'f[alls] below an objection standard of reasonableness,' given the particular circumstances of the case at hand." *Hodge v. U.S.,* 554 F.3d 372, 379 (3d Cir. 2009)(*quoting Strickland,* 466 U.S. at 688)). As in any other ineffective assistance of counsel context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

The Court must employ a highly deferential standard, which entails "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Hankerson,* 496 F.3d 303, 310 (3d Cir. 2007)(quoting *Strickland,* 466 U.S. at 689).  To rebut this presumption, a Petitioner "must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel, or (2) that the actions could never be considered part of a sound strategy." *Thomas v. Varner,* 428 F.3d 491, 499 (3d Cir. 2005).

Under the second prong (i.e., the prejudice prong), Petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a 'probability sufficient to undermine confidence in the outcome.'" *Hankerson*, 496 F.3d at 310 (quoting *Strickland*, 466 U.S. at 694).

## III.    Discussion

In the instant Motion to Vacate Sentence, Petitioner raises three (3) issues for this Court's consideration, which are addressed *seriatim.*

### A.    Petitioner's Claim That His Counsel Was Ineffective During the Guilty Plea Proceedings and at Sentencing for Failing to Object to His Career Offender Designation is Without Merit.

Petitioner contends that his attorney was ineffective in failing to object to or challenge his career offender designation at sentencing.  The Court notes, however, that the plea agreement does not reference the Guideline range or his career offender designation, and instead states that the sentence of 96 months imprisonment is appropriate in this case.

Petitioner's counsel secured a pre-plea PSIR which designated him as a career offender, showing that he was diligent in his representation of Moore.  Contrary to Petitioner's position, had his attorney contested that designation at some point during the proceedings prior to the change of plea, that would essentially have negated his ability to enter into the plea agreement containing a stipulated sentence, since part of the agreement precluded the parties from raising objections to enhancements, and variance requests.  Had his counsel attempted to object during the sentencing proceedings, the plea agreement would have barred such an objection. In any event, the record more than adequately reveals that his attorney carefully considered his exposure

as a career offender based upon the longstanding legal precedent in effect during both the plea and sentencing proceedings.

After all, the law that was in effect at the time of Petitioner's guilty plea hearing and at his sentencing was that inchoate offenses including controlled substance offenses were proper for consideration as a career offender. *United States v. Hightower*, 25 F.3d 182 (3d Cir. 1994). Petitioner posits that his prior Pennsylvania state court convictions exclude him from career offender designation, under the *Nasir* decision, which was decided almost a year after Petitioner plead guilty and 7 months after he was sentenced, and that it was ineffective assistance of counsel for his counsel to fail to argue that he should not have been a career offender.

In *Nasir*, the United States Court of Appeals for the Third Circuit held that "inchoate crimes are not included in the definition of controlled substance offense given in Section 4B1.2(b), thereby overruling long established precedential authority established in *United States v. Hightower*, 25 F.3d 182 (3d Cir. 1994). *United States v. Nasir*, 982 F.3d 144 (3d Cir. 2020).

Essentially, Petitioner asks this Court to find his counsel ineffective for failing to predict a change in the law. Additionally, unlike many other Defendants, Petitioner had the benefit of a diligent attorney who discerned Petitioner's career status, so that Petitioner could be well informed, by requesting a pre-plea PSI. Petitioner's counsel was diligent, and his conduct was certainly reasonable in light of the law in effect at the time of both the guilty plea and the sentencing.

Moreover, Petitioner's contentions fall squarely at odds with his testimony, under oath, at the change of plea hearing. The Government specifically addressed the finding that the Petitioner had been identified – by the United States Probation Office – as a career offender, and Petitioner agreed. The Government also stated that without the career offender designation

Petitioner would have a criminal history category of II, and Petitioner agreed upon questioning by the Court. The Government informed the Court that it estimated Petitioner, as a career offender, would be subjected to a Guideline Range of between 188- and 235-months' imprisonment, and Petitioner agreed.

This Court advised Petitioner of the statutory penalties, which included a sentence of at least five (5) years and not more than forty (40) years' imprisonment, and upon questioning by the Court, Petitioner agreed.  The Government further advised the Court that the agreed upon sentence – 96 months – was below the Guideline Range, and Petitioner assented that he understood.   As the Government emphasizes, and the Court certainly concurs, Petitioner cannot expect his attorney to predict a change in the law.  *United States v. Frezzell*, 2021 WL 2784256 at *5 (citing *United States v. Doe*, 810 F.3d 132, 154 (3d Cir. 2015)).

### B.  Petitioner's Counsel Is Not Ineffective for Failing to Request a Continuance

Since Petitioner's counsel cannot be deemed ineffective for failing to predict a change in the law, Petitioner's related argument that his counsel should have requested a continuance of the sentencing proceedings, in light of the *Nasir*, is also unconvincing.

Petitioner expressed his position in a motion and upon questioning by this Court, under oath, that he wished to proceed "expeditiously," with the sentencing proceedings in order to take advantage of the programing offered by the BOP.   (Doc. 981 and Doc. 1164 at 3:14-6:1).  He cannot now credibly take the opposite position after having so affirmed his desire to proceed with the sentencing by videoconference in a prompt fashion.  Additionally, the January 21, 2021, letter from Moore to this Court further reveals that he wished to accomplish his goals during his term of imprisonment and he did not use any words revealing any level of discontent with his attorney, or the proceedings.  ( Doc. 1296).

In order to follow Petitioner's speculative argument, the Court would have had to invalidate the guilty plea proceedings, and the plea agreement, since it contained a stipulated sentence, which the Court had no reason to do, based upon the plea proceedings, his knowing/voluntary decision to plead guilty, and his agreement to the sentencing terms outlined in the plea agreement.  For sake of argument, following Petitioner's speculative timeline, had he never agreed to the plea agreement with a stipulated sentence, and instead his attorney secured a standard agreement (not containing a stipulated sentence), approximately three months after his guilty plea, he would have had an opportunity to object to the Guidelines calculations and enhancements.  Had that been the procedural timeline, the longstanding case law in effect at that time would have still precluded his attorney's arguments and a finding by this Court that he is not a career offender.  Had some other procedural timeline occurred, it is highly improbably that this Court would have agreed to delay these criminal proceedings for close to a year on the basis that the *Nasir* case was on appeal - - again, Petitioner pled guilty on January 14, 2020, was sentenced on May 19, 2020, and *Nasir* was decided on December 1, 2020.  These potential hypothetical scenarios are highly speculative, and do not provide any basis for a finding that Petitioner's counsel was ineffective for failing to essentially attempt to revoke his plea, to predict a change in the law, or to delay the proceedings against the continually stated request of Petitioner, that the sentencing proceed expeditiously.

## C.  Petitioner's Claim That He Sought to Appeal and His Attorney Failed to Perfect An Appeal on His Behalf Is Contradicted by the Record.

In the face of the record evidence that reveals that Petitioner's counsel would have had no reason to believe he wished to appeal, Petitioner now raises a vague and conclusory claim that he asked his counsel to appeal, and counsel failed to perfect an appeal on his behalf.  The record contradicts Petitioner's current claim.

17

As the Government emphasizes, and this Court agrees, in general, when " a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions." *Garza v. Idaho*, 139 S.Ct. 738, 746 (U.S. 2019).  Prejudice is therefore presumed regardless of whether a plea agreement contained an appellate waiver. Id. at 742.  In circumstances such as this, the preliminary question is whether Moore's counsel had a duty to consult with him about an appeal.  *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).  The law assesses a duty to do so only "when there is reason to think a rational defendant would want to appeal, or that this particular defendant reasonably demonstrated to his counsel that he was interested in appealing." *Id.*

The record here refutes Petitioner's sudden allegation (by affidavit with attached dated letter) that he requested his attorney to file a notice of appeal, which his attorney allegedly ignored.  At numerous points during both the plea proceedings and most crucially, at the conclusion of the sentencing proceedings in open court, Petitioner testified that he did not wish to file an appeal, and the Court reminded him that if he changed his mind, he would need to file the appeal within 14 days and could use his counsel in his appeal.  Additionally, earlier in the plea proceedings, Petitioner indicated, and the Court found that he understood and agreed to the waivers of appeal rights that drastically reduced his ability to perfect an appeal.  Petitioner now alleges that he "wrote counsel a letter advising him that I wanted a notice of appeal filed . . . the letter was within the 14 day time frame allowed, but upon information and belief, the appeal request was ignored by counsel." (Doc. 1312, at p.3).  Oddly, though, Petitioner provides no reasons for an appeal, especially in light of his 11(c)(1)(C) plea agreement.  His indefinable and subjective account that he directed counsel to perfect an appeal, which counsel allegedly ignored, is belied by the record.  In fact, Petitioner attached a letter from his counsel wherein the *Nasir*

18

decision was discussed, and his attorney advised that he could file a Motion to Vacate on this basis.  Absent from the letter was any contention by his counsel that he had sought a direct appeal on this or any other basis.  Simply stated, there is no credible evidence supporting any contention that Petitioner was not satisfied with his agreed upon sentence, and therefore, no duty to consult attached.  Counsel was not ineffective for failing to file an appeal on behalf of Petitioner in this case.  Instead, the conduct of Petitioner's attorney throughout the proceedings and even in the correspondence Petitioner attached to his filings, demonstrates that his attorney continued to help him to advocate, even months after the criminal case had been closed.  The Court further notes that counsel authored an 11-page single spaced letter to Petitioner prior to his guilty plea, where he considered and discussed all of Petitioner's concerns regarding a potential guilty plea.  The record unambiguously reveals that Petitioner did not so advise his counsel or the Court that he wished to appeal, and therefore, no duty to file an appeal attached.

## IV.    Conclusion

The United States Court of Appeals for the Third Circuit has explained that counsel's performance is not deficient, where they have "fail[ed] to predict a change in the law." *United States v. Doe*, 810 F.3d 132, 154 (3d Cir. 2015).  Judging Petitioner's allegations in the light most favorable to him, he has failed to meet his burden to warrant collateral relief.  The Court will not hold an evidentiary hearing because the motion and supplements conclusively show that Petitioner is not entitled to relief.  *United States v. Booth*, 432, F.3d 542, 545-46 (3d Cir. 2005).  Therefore, no discovery is warranted and an attorney will not be appointed to litigate meritless claims.

Likewise, Petitioner has made no substantial showing of the denial of a constitutional right or that reasonable jurists would find this Court's assessment of the constitutional claims

debatable or wrong. *Ebo v. United States*, 2020 WL 614113, at *9 (W.D. Pa. Feb. 10, 2020)(*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The Court will not issue a Certificate of Appealability.

      Petitioner's Motions to Vacate, Set Aside, or Correct Sentence, for Discovery and to Appoint Counsel, will be DENIED.  (Doc. 1311, Doc. 1313 and Doc. 1403).  An appropriate Order follows.

                               So Ordered, this 23rd day of June, 2022

                               s/Arthur J. Schwab
                               Arthur J. Schwab
                               United States District Judge

cc:     All Registered ECF Counsel and Parties